Motion to dismiss appeal denied September 28, 1920, *second motion*
to dismiss denied February 1, 1921, argued on the merits December 6, 1921, affirmed January 17, 1922.

## NICHOLAS v. YAMHILL COUNTY.

(192 Pac. 410.)

**Appeal and Error—Transcript Sufficient to Give Jurisdiction Though Incomplete.**

1. In suit to enjoin a tax proceeding prosecuted under Laws of 1915, page 205, transcript, though incomplete and unsatisfactory, *held* sufficient to give the Supreme Court jurisdiction of the appeal.

**Appeal and Error — Order Should Issue Directing Clerk Below to Send up Pleadings and to Prepare Exhibits.**

2. Order should be issued from the Supreme Court, directed to the clerk of the court below, requiring him to send up the original pleadings and to prepare the exhibits and depositions and turn them over to attorneys for plaintiff appellant, as required by Laws of 1913, page 656, Section 1, Section 554, L. O. L., as amended by Laws of 1913, page 618.

**Evidence—Judicial Notice of Distance of Town from City Taken.**

3. The Supreme Court will take judicial notice that McMinnville is less than fifty miles from Portland, Oregon.

**Appeal and Error — Rule as to Service of Printed Abstract Sufficiently Complied With.**

4. Where the transcript on appeal was filed in the Supreme Court July 23d, and the printed abstract was filed August 13th, accompanied with proof of service that an attorney for appellant August 11th mailed in Portland, Oregon, a copy of the abstract addressed to the attorney for the respondents at a town within fifty miles of Portland, postage prepaid, there was a sufficient compliance with Rule 6 of the Supreme Court (89 Or. 712, 173 Pac. viii).

### ON THE MERITS.

(203 Pac. 593.)

**Bridges — Legislature may Authorize Tax Levy on Residents of Island Road District to Pay Bridge Bonds.**

5. The legislature may authorize a tax levy on residents of an island road district to pay bonds issued to build a bridge from which they derive the principal benefit.

**Statutes — Act for Bonding Island Road Districts for Building Bridges Held not Unconstitutional Because Title Embraced All Road Districts.**

6. Sections 4741–4753, Or. L., *held* not in violation of Constitution Article IV, Section 20, as purporting to include all road districts and implying that bonds thereof may be issued for various purposes, though the act embraces only such districts as are com-

posed entirely of an island in a navigable river, and limits the issuance of bonds to build bridges; the title apprising residents of such districts of the proposed legislation.

Taxation—Jurisdiction to Restrain Collection of Tax not Invoked for Mere Illegality or Irregularity in Proceedings.

7. The jurisdiction of equity to restrain the collection of a tax cannot be invoked for mere illegality or irregularity in the proceedings; its jurisdiction being confined to cases where the tax itself is not authorized or is assessed on nontaxable property, the persons exacting it are without authority or have proceeded fraudulently, or some other ground of equitable interference is shown.

Elections — Substantial Compliance With Statute as to Notice of Bond Election is Sufficient.

8. It is a condition precedent to the validity of an election as to a bond issue for a public purpose that notices be given for the time and substantially in the manner designated in the statute, but the particular form and manner pointed out by the statute is not essential.

Bridges—Bond Election Held Valid, Though Proof of Notice Dated After Meeting.

9. Under Sections 4741–4753, Or. L., requiring proof of posting notice of meeting to authorize a bond issue for the building of a bridge by affidavit, and that the secretary of the meeting shall inclose copies of such proof with his certificate to the county clerk, an election was valid, where the affidavit, though dated later than the meeting showed the notices were properly posted, and the proof which the secretary's minutes recited was submitted, accompanied his certificate, which was filed on the date of the affidavit.

Newspapers—Printer's Affidavit of Circulation Held Sufficient.

10. The printer's affidavit that the paper "is of general circulation" was sufficient proof of publication, within Sections 4741–4753, Or. L., and of an order for publication of notice of bridge bond election.

Bridges—Affidavit of Posting Notice "in" Instead of "at" Courthouse Held Sufficient.

11. An affidavit that notice of a bond election for construction of a bridge was posted "in," instead of "at," the courthouse, as required by Sections 4741–4753, Or. L., *held* sufficient; "at" meaning "in," or "within," and more generally "within" than "without."

Bridges—Evidence Held Sufficient to Show Affidavit Stated When Notice of Bond Election was Posted.

12. In a suit to restrain the collection of a special tax to pay bonds issued pursuant to Sections 4741–4753, Or. L., the record and certified copy of the proof of the posting of notice of the election on a date conforming to the secretary's minutes of the election meet-

8. Necessity of compliance with statutory requirements as to notice of election for issuance of bonds, see note in 18 **Ann. Cas.** 1137.

ing and the court's order declaring the result, *held* sufficient to show that the affidavit of posting stated the date thereof, though plaintiff's certified copy of the record contained no such statement.

**Bridges — Court's Order Declaring Result of Bond Election Cures Irregularities.**

13. Under Sections 4741–4753, Or. L., providing that an order by the County Court declaring that a majority of the electors of an island road district voted to issue bonds for the construction of a bridge "shall be absolutely conclusive as to the regularity of all the proceedings," such order cures all mere irregularities.

**Appeal and Error—Assignments not Discussed in Brief or Argued Assumed Abandoned.**

14. The Supreme Court will assume that all assignments of error not discussed in appellant's brief nor alluded to in argument are abandoned.

From Yamhill: HARRY H. BELT, Judge.

In Banc.

This is an action by R. W. Nicholas against Yamhill County, Oregon, and W. G. Henderson, Sheriff. From a judgment in favor of defendants, plaintiff appeals. Respondents move to dismiss appeal.

MOTION DENIED.

*Mr. R. L. Conner,* District Attorney, for the motion.

*Mr. Newton McCoy* and *Mr. H. B. Nicholas, contra.*

BENNETT, J.—This is a motion to dismiss the appeal in the above-entitled cause upon the following grounds:

First: That the original pleadings have not been sent up, as required by Chap. 335, Laws of 1913.

Second: The appellant has not filed a transcript of the evidence heard in the trial court.

Third: The appellant has not served the printed abstract upon the attorneys for respondent, as required by Rule 6 of this court.

Fourth: That the printed abstract of record is not sufficient because it does not include a copy of the

pleadings, and is not sufficient to give the court a full understanding of the questions presented for decision.

It appears from the affidavit of the attorney for respondent that, the pleadings in the original cause in the lower court were very voluminous, the complaint and answer alone constituting more than 30 pages of typewritten matter. The printed abstract filed by the appellant is very brief, and does not give a complete copy of any of the pleadings in the case, but only such summary as appellant seems to deem necessary for an understanding of the question which he presents. The appellant contends, however, that the abstract is sufficient to give the court jurisdiction, and asks for an order requiring the clerk of the court below to send up the original pleadings.

While the abstract is by no means satisfactory, and probably is insufficient to present some of the questions relied upon by the appellant, yet we think it is enough to clearly present to the court at least one question—the question of the constitutionality of Chap. 170, Laws of 1915, under which the tax proceeding sought to be enjoined was prosecuted.

Section 1 of Chap. 335, Laws of 1913, is as follows:

"When an appeal is perfected the original pleadings and the original bill of exceptions shall be sent by the clerk, or other proper officer of the trial court, to the clerk of the Supreme Court or appellate court, and shall be a part of the transcript in the Supreme Court or appellate court so long as it may be needed there, and if the said papers are later required for use in the trial court, said papers shall be returned to the trial court and kept of record therein, the object being to require one original record to answer the purpose in each court, and the Supreme Court or appellate court is instructed to promulgate the

necessary rules for the custody of the original record to accomplish this purpose.''

And Section 554, L. O. L., as amended by Chap. 320, Laws of 1913, provides in subdivision 1:

''If the appeal is from a decree and the cause is to be tried anew on the testimony, the clerk shall attach together the testimony, depositions, and other papers on file in his office containing the evidence heard or offered on trial in the court below, and deliver the same to the appellant, taking therefor his receipt in duplicate, one of which receipts he shall file in his office and the other deliver to the respondent when so requested. Such evidence shall be deemed a part of the transcript or abstract and shall be filed therewith.''

Rule 11 adopted by this court (89 Or. 715, 173 Pac. ix), providing for the form of an abstract, is as follows:

''Set out all of the complaint necessary to an understanding of the questions to be presented to this court, and no more. In setting out exhibits, omit all merely formal irrelevant parts.''

And in relation to the answer:

''Here set out so much of the answer as may be necessary to explain the questions raised on the appeal, and no more, omitting all formal parts.''

1. We think that the transcript in the case, while incomplete and unsatisfactory, is sufficient to give the court jurisdiction.

2. We also think an order should be issued from this court, directed to the clerk of the court below, requiring him to send up the original pleadings and to prepare the exhibits and depositions and turn them over to the attorneys for appellant, as required by the above enactments.

In *Smith* v. *Algona Lbr. Co.,* 73 Or. 1, 6 (136 Pac. 7, 9, 143 Pac. 921), it is said in an opinion by Mr. Justice McNARY:

"The form of a part of that record is not as required by statute, and to dismiss an appeal for non-observance of form when the substance is supplied would be carrying the rule beyond reason, and giving effect to form rather than substance. While vexatious appeals should be discouraged, yet the opportunity for litigants to have their issues tried in the higher courts should not be hindered by technical constructions, which too frequently lead to the subversion of justice."

And the latter paragraph of this language is quoted and followed in an opinion by Mr. Justice HARRIS in *State* v. *Rider,* 78 Or. 318, 320 (145 Pac. 1056), in which the court refuses a motion to dismiss and further says:

"At least one phase of the case can be submitted on appeal without the presence of a bill of exceptions, and even though other questions discussed in the brief could not be considered without the evidence and a bill of exceptions. If plaintiff deemed the abstract imperfect or unfair, an additional abstract could have been filed, as provided by Rule 7."

As to the service of the printed abstract upon the respondents, Rule 6 of this court (89 Or. 712, 173 Pac. viii) requires:

"Within twenty days after the transcript is filed in a civil case the appellant shall serve upon the attorney for each respondent a printed abstract, prepared as hereinafter provided, containing a copy of so much of the record, as may be necessary to a full understanding of the questions presented for decision, and within five days after service of the abstract the appellant shall file with the clerk of this court sixteen copies thereof, accompanied with proof of

such service. In case of cross-appeals, the party first giving notice of appeal shall be considered the appellant under this rule. In criminal cases, a printed abstract may be served and filed, or not, as the appellant may elect. No case shall be docketed for hearing unless this and other rules are complied with, except by order of the court.''

In this case the transcript appears by the record to have been filed in this court on the twenty-third day of July, and the printed abstract was filed on the thirteenth day of August, accompanied by the following proof of service:

''I, H. B. Nicholas, one of the attorneys for appellant, do hereby certify that on the 11th day of August, 1920, I mailed at the postoffice in Portland, Oregon, a copy of this abstract, addressed to R. L. Conner, McMinnville, Oregon; postage thereon being fully prepaid, all in accordance with the regulations of the United States postoffice.

''H. B. NICHOLAS,<br>''Attorney for Appellant.''

This transcript, in the regular course of mail, would have reached McMinnville, on the 12th of August, which would have been sufficient. Even if it reached there on the 13th it would have been sufficient under the repeated decisions of this court. The showing of the respondent as to whether he received this abstract, and as to when, if he did receive it, is equivocal, and he says in his brief:

''If same was so mailed by appellant, or his attorney, it did not reach the hands of the attorney for respondents until some time after the 20 days had expired following the filing of the transcript, and even if it were considered that placing same in the postoffice would constitute a service thereof, it was not made within the time prescribed by Rule 6.''

Section 540, L. O. L., provides:

"Service by mail may be made, *when the person for whom the service is made,* and the person on whom it is to be made, reside in different places, between which there is a communication by mail, adding one day to the time of service for every fifty miles of distance between the place of deposit and the place of address."

3. The court will take judicial knowledge that McMinnville is less than fifty miles from Portland.

4. We do not thing any good purpose could be served by such a strict construction of Rule 6 as would shut out the appeal in this case. The motion to dismiss is denied, and it is ordered that the clerk of the lower court be required to send up the original papers in the case, as hereinbefore indicated.

MOTION DENIED.   SECOND MOTION TO DISMISS
APPEAL DENIED.

Affirmed January 17, 1922.

ON THE MERITS.

(203 Pac. 593.)

Plaintiff commenced this suit against Yamhill County and W. G. Henderson, as sheriff thereof, to restrain the collection of a special tax assessed for the year 1918 against the real property of plaintiff located within Road District No. 38 in said county.

Road District No. 38 is composed entirely of an island in the Willamette River, known as Athey's Island, and the tax mentioned was levied to pay the accruing interest upon and the sinking fund installment for the payment of negotiable bonds of the road district to the amount of $7,000, issued pur-

suant to and under the provisions of Chapter 170, Laws of 1915, Or. L., Sections 4741 to 4753, for the purpose of building a bridge across Willamette Slough, one branch of the river forming said island.

On October 28, 1915, more than 10 per cent of the resident taxpayers who were legal voters in said road district, filed with the county clerk of Yamhill County a petition, as authorized by Chapter 170, Laws of 1915, and therein petitioned the County Court of said county to order an election to determine whether or not said County Court should issue bonds to the amount of $7,000 for the construction of a bridge across the Willamette Slough leading to Athey's Island, at a point named in the petition, and levy a special tax on all the taxable property of said Road District No. 38, to pay the interest on said bonds and to provide a sinking fund to redeem the same at maturity.

Upon consideration of the aforesaid petition, the County Court on November 15, 1915, ordered an election to be held on Saturday, the eighteenth day of December, 1915, for the purposes set forth in the petition.

The order calling the election, among other things, recited the self-evident facts:

"That the construction of said bridge will be beneficial principally to the residents and owners of real property in said district. * *   That the construction of said bridge across the said Willamette Slough is a public necessity, and if so constructed will connect said island with one of the county roads and public highways of said county."   And the order directed:

"That notice of said election shall be given by the county clerk of this county by causing them to be posted in three public places in said road district and one at the courthouse in the City of McMinnville, Yamhill County, Oregon, at least ten days prior to

the said election meeting herein provided for, and also publish one notice at least three weeks in the 'News Reporter' a newspaper published weekly at McMinnville, Oregon, and having a general circulation in said county, which said notice shall give the time, place and object of said meeting as by law provided.''

Notices of election were posted and published as directed in the order and required by the statute. The election was held as therein directed, at which the vote was unanimous in favor of issuing the bonds and levying a special tax on all the taxable property of the road district for the payment of the interest on the bonds and to provide a sinking fund to redeem the same at maturity. The chairman and secretary elected at the meeting organized for the purpose of holding said election, certified the result of the election to the County Clerk on November 24, 1915, and thereafter on January 5, 1916, the County Court entered an order in its journal declaring that fact and that the proceedings pertaining to the meeting and to the organization thereof, had for the purpose of holding said election, as well as to the election, were all legally had and fairly conducted, and the court approved, ratified and confirmed the same in all respects.

Thereafter bids for the purchase of the bonds were invited by publication in two newspapers, one in Yamhill County and one in Portland, Oregon, as required by the statute, and pursuant thereto, the bonds were sold and issued to the highest bidder therefor. Promptly after the sale of the bonds, the bridge was built, and has since been in use by the residents upon the island and by others having occasion to go to and from the island. The holders of the bonds are not made parties to this suit.

Plaintiff bases his claim for relief from the payment of the aforesaid tax upon the following grounds alleged in his complaint:

(1) That the act, Chapter 170, Laws of 1915, is unconstitutional and void, in that the title thereof does not express the subject of the act, as commanded by Section 20, Article IV, of the Constitution.

(2) That jurisdiction was never obtained by the road district meeting nor the court, to vote or levy the tax, because:

(a) The affidavit of posting one of the notices of the election at the courthouse states that the affiant posted the notice *in* the courthouse, instead of *at* the courthouse, and fails to state that he posted it ten days before the meeting, or when he posted it.

(b) The affidavit of J. H. Tompkins as to posting notices in the district was sworn to on December 24, six days after the meeting, and could not have been submitted at the meeting, as required by the law.

(c) The affidavit of the printer is to the effect that his paper "is of general circulation," instead of "general circulation in the county," as required by the law.

(3) The bonds were offered for sale by the county clerk, instead of the bonding committee and were actually sold by the county clerk and judge, instead of the bonding committee, which was composed of the County Court and clerk.

(4) The tax of 12.4 mills exceeds the maximum of 10 mills allowed by law, and the same is not uniformly levied on all the property of the county.

After hearing the cause, the Circuit Court found that all of the proceedings relative to the issuance, sale and delivery of the bonds in question were regular, and that the tax sought to be enjoined by plaintiff was regularly levied and a valid lien against all the

102 Or.—40

property, both real and personal, of said Road District No. 38, against which the same was levied and assessed, including the real property described in plaintiff's complaint. Having so found, the Circuit Court entered a decree dismissing plaintiff's complaint. This appeal is taken from that decree.

AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Newton McCoy* and *Mr. H. B. Nichols.*

For respondent there was a brief and oral argument by *Mr. R. L. Conner,* District Attorney.

McCOURT, J.—5. The residents of the road district, embracing Athey's Island, derive the principal benefit from the bridge, to construct which the bonds in question were issued, and it is within the legislative power to provide a means by which they should bear the burden of constructing the same; *Cook* v. *Port of Portland,* 20 Or. 580, 590 (27 Pac. 263, 13 L. R. A. 533).

6. Chapter 170, Laws of 1915, is entitled, "An Act to provide for bonding road districts under certain circumstances."

Plaintiff's criticism of the foregoing title is that it is more comprehensive than the act; that it purports to include all road districts in the state and implies that bonds of a road district might be issued for a variety of purposes, whereas the act by its terms embraces only those road districts that each thereof is composed entirely of an island in a navigable river, and limits the issuance of bonds to providing funds to build a bridge over either branch of the river forming such island.

The foregoing title expresses but one subject, viz.: bonding road districts. An examination of the act discloses that all its provisions relate directly to one subject, the issuance of negotiable bonds of any road district composed entirely of an island in a navigable river, to provide funds for the purpose of building a bridge across either branch of the river forming such island.

If the language employed in the title of a legislative act apprises those of particular districts that legislation is proposed which may affect them, such title does not violate the requirements of Section 20, Article IV of the Constitution, because it is so general as to indicate that every portion of the State may be brought within the scope of the law: *State ex rel.* v. *Frazier,* 36 Or. 178, 184 (59 Pac. 5).

In the case last cited the contention was made that the title of the act under consideration in that case was general and intended to apply to the whole state, while in the body of the act, it was limited to the class of counties containing more than fifty thousand inhabitants, and that therefore the subject was not properly expressed in the title, because it did not indicate the limit of the operation of the act. The court overruled this contention, and in its opinion Mr. Justice BEAN, speaking for the court, at page 182 of the opinion, said:

"It has been repeatedly held that the section of the Constitution here invoked is not directed against the generality or comprehensiveness of the title of legislative enactments, nor does it require that such title shall index the details thereof. If all the provisions of the law relate, directly or indirectly, to the same subject, and are not foreign to the subject expressed in the title, it will not be held unconstitutional. The object of the constitutional provision is to prevent the

blending of incongruous subjects in the same act, using the title as a deception, and to prevent combining subjects representing divers interests in one act in order to unite the members of the legislature who favor either in support of all. There has been a general disposition manifested in the cases cited to construe the constitution liberally, rather than to embarrass legislation by a strict construction.''

A large number of cases upon this point, and sustaining the rule announced in *State ex rel.* v. *Frazier,* is collected in a note in Ann. Cas. 1912A, 102.

The foregoing statement of the rule applies to the contention made by plaintiff in this case, and shows the same to be untenable.

7. The next contention made by plaintiff relates to the proof of the posting and publication of the notices of the election held in the road district. The official records in evidence disclose that the notices were in the form provided by the statute; that those required to be posted were actually posted for the length of time and as required; that the notice required to be published was actually published for the requisite length of time in the newspaper designated by the County Court; that the election was held at the time specified and resulted in a unanimous vote in favor of issuing the bonds and levying the tax. The objection made by plaintiff is that the proof of the publication and of the posting of the notices did not strictly conform to the requirements of the statute.

The jurisdiction of a court of equity to restrain the collection of a tax cannot be invoked for mere illegality or irregularity in the proceedings,

'' * * but its jurisdiction is confined to cases where the tax itself is not authorized by law, or is assessed on property not subject to taxation, or the persons exacting it are without authority in the premises, or

have proceeded fraudulently, or some other ground of equitable interference is shown." *Leach* v. *Port of Tillamook,* 62 Or. 345 (124 Pac. 642), citing *Yamhill County* v. *Foster,* 53 Or. 124, 132 (99 Pac. 286); *Welch* v. *Clatsop County,* 24 Or. 452 (33 Pac. 934); *Hibernian Benevolent Society* v. *Kelly,* 28 Or. 173 (42 Pac. 3, 52 Am. St. Rep. 769, 30 L. R. A. 167); *Alliance Trust Co.* v. *Multnomah County,* 38 Or. 433 (63 Pac. 498); *Callender Navigation Co.* v. *Pomeroy,* 61 Or. 343 (122 Pac. 758).

8. It is a condition precedent to the validity of an election granting authority to issue bonds to provide funds for a public purpose and to levy taxes to pay the interest thereon and create a sinking fund to pay the principal, that the notices of the election required by statute be given for the time and substantially in the manner designated therein: *Staples* v. *Astoria,* 81 Or. 99 (158 Pac. 518); *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328, 120 Am. St. Rep. 786); *Guernsey* v. *McHaley,* 52 Or. 555 (98 Pac. 158).

In the opinion in *Staples* v. *Astoria,* 81 Or. 99 (158 Pac. 518), Mr. Justice BEAN quoted with approval the following from 9 R. C. L. 992:

"Considerable liberality is, however, allowed even in these elections, and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. * * This liberal rule is based upon the theory that where the people have actually expressed themselves at the polls the courts are strongly inclined to uphold rather than to defeat the popular will. But there must be at least a substantial compliance with the statutory provisions in order that the notice may be held to be constructive."

To the same effect see 15 Corpus Juris, 619.

9. The affidavit of posting the notices in the road district was made by J. H. Tompkins, road supervisor of the district; the affidavit of publication was made by Edgar Meresse, the printer of the "News Reporter"; and the affidavit of posting notice at the courthouse was made by C. B. Wilson, the county clerk. The objections urged by plaintiff to these proofs will be considered separately.

The statutes provides:

"Proof of posting notice of said meeting shall be made by affidavit of the party posting the same and submitted to said meeting, together with proof of publication of such notice." And also that: "The secretary of said meeting shall keep a record of all the proceedings and due proof of posting and publishing of said notices, and shall inclose with his certificate above mentioned, to the county clerk of said county, certified copies of all proceedings, including such proof of posting notices and publication thereof."

The statute further requires that the notice of election shall be posted in three public places in the road district, and one at the courthouse in said county at least ten days prior to the meeting, and that one such notice shall be published at least three weeks in one weekly newspaper "of general circulation in the county."

The proof of posting the three notices in the road district made by the affidavit of J. H. Tompkins, road supervisor of the district, shows that the notices were posted for the time and as required by the statute. The date of the notary's jurat upon this affidavit is December 24, 1915; the election was held December 18, 1915.

Plaintiff insists that the proof of such posting could not have been submitted to the meeting as required by the statute, and that its absence shows a jurisdictional defect which disabled the electors of the road district from authorizing either a valid issue of bonds or a legal tax levy for the payment of principal and interest thereon. The minutes of the meeting in evidence recite that such proof was submitted at the meeting, and it is in evidence that the proof of posting made by Tompkins accompanied the certificate of the proceedings of the election, which was filed with the county clerk on December 24, 1915, the day the affidavit of posting the notices appears to have been executed. The control and authority of the secretary of the meeting over the records required to be made and kept by him, continued for ten days after the meeting, within which time he was required to certify the proceedings to the county clerk. He had the power while his authority over the record continued to correct or amend the same to conform to the proceedings of the electors: *Vaughn* v. *School District,* 27 Or. 57 (39 Pac. 393).

It may well be that J. H. Tompkins, whom the record shows was present and voted at the meeting, did submit an affidavit of such posting at the meeting, for which the affidavit bearing the later date was substituted by the secretary of the meeting.

It is the notice, and not the proof of posting and publication thereof, that qualifies the electors to hold the election and authorize the bond issue and the levy of taxes for the payment thereof.

The notice was given for the required length of time and in strict conformity to the statute; the electors of the district in response thereto met at

the place designated for holding the election at the appointed time. So far as disclosed by the record, all those interested in the matter and qualified to vote were present at the meeting. Plaintiff did not and does not now reside in the district and was not qualified to vote at the election.

The election was held and a unanimous vote given in favor of issuing the bonds and levying the tax. It does not appear that the failure, if there was one, to submit the proof of posting these notices at the meeting affected or could have affected the result in any way; at most it was a mere irregularity, and therefore it did not invalidate the election: *State* v. *Hall,* 73 Or. 231, 243 (144 Pac. 475).

10. The affidavit of the printer in furnishing proof of publication of the notice in the "News Reporter" stated that the paper "is of general circulation," and plaintiff contends that the proof to be sufficient must have stated that the paper "is of general circulation in the county."

In the order authorizing and calling the election, the County Court directed that the publication of the notice of election should be made in the "News Reporter" and in the order the court declared that the "News Reporter" was "a newspaper published weekly at McMinnville, Oregon, and having a general circulation in said county." The official declaration thus made under the facts of this case supplies the absence of a recital to the same effect in the proof of publication, if indeed such a recital was essential thereto.

In the case of *Gard* v. *Henderson,* 95 Or. 520 (187 Pac. 839), proof of publication substantially in the form of that complained of here was held sufficient

to establish that the publication was made in a newspaper of the character defined by the law, in the absence of a showing to the contrary made by affidavit in the proceeding in which the proof was filed. To the same effect see *Oregon Inv. & Mortgage Co.* v. *Keller,* 85 Or. 262 (166 Pac. 762).

11. Plaintiff next objects to the affidavit of posting the notice at the courthouse, as required by statute. To this affidavit two objections are made. First, that the affidavit recites that the notice was posted *in* the courthouse, instead of *at* the courthouse, and second, that the affidavit did not state the date the same was posted.

In support of the first objection, plaintiff cites several Wisconsin cases, the principal one of which is *Hilgers* v. *Quinney,* 51 Wis. 62 (8 N. W. 17). That was a case of a sale of land for delinquent taxes. The statute required the county treasurer to post notices in at least four public places in the county, one of which copies was to be posted in some conspicuous place in his office. The treasurer's return of posting the notices recited that he published one of the notices *at* his office. The court held *at* was not the equivalent of *in,* and therefore the proof was insufficient.

In the later case of *Allen* v. *Allen,* 114 Wis. 615 (91 N. W. 219), a case almost identical with that of *Hilgers* v. *Quinney,* and involving the same statute, the court overruled the earlier case and said:

"Notwithstanding what was said on this subject in the Hilgers case, we do not feel that we ought to hold that this variance alone is fatal. * * It seems certain that posting 'at' a public place is substantially the equivalent of posting 'in' a public place, and we

therefore hold that the affidavits of posting in the present case were sufficient.''

By the weight of authority, the word ''at'' means ''in'' or ''within,'' and more generally means ''within'' than ''without'': See note, Ann. Cas. 1912B, 1070.

A bulletin-board is usually provided at the courthouse of each county in the state, upon which legal notices are posted. Sometimes this bulletin-board is placed within the doors of the entrance to the building, and sometimes it is placed outside the entrance upon the porch or vestibule, immediately in front of the entrance, depending upon the season of the year or the state of the weather. Strictly speaking, notices posted upon such bulletin-board when the same stands outside the entrance door should recite that the notice was posted *at* the courthouse, while if such notice was posted on the bulletin-board when it stands inside the door, the proof should recite that it was posted *in* the courthouse. In either case, the public would get identically the same notice, and it would be immaterial whether the proof recited that the notice was posted *at* or *in* the courthouse. In view of the purpose to be served by the notice and the practice in posting such notices, the words *at* and *in* are equivalent and synonymous as used in the statute under consideration, and the affidavit is not subject to the objection under discussion.

12. As to the second objection to this affidavit, that it does not state the time when the notice was posted, plaintiff depends upon a certified copy of the record furnished by him as evidence in the case, which certified copy does not contain any statement of when the notice was posted. To contradict this evidence,

the defendants offered in evidence the record of the proof on file with the county clerk, together with a certified copy thereof, both of which contain the recital respecting the notice that the ''same was so posted on November 23, 1915.''

This latter proof conforms to the recitals contained in the minutes of the election and to those contained in the order of the County Court declaring the fact of the result of the election. The weight of the evidence therefore is against plaintiff's contention of fact, and excludes further consideration of his legal contention based thereon.

13. All the matters in connection with the election upon which plaintiff relies are mere irregularities. The statute provides that the order entered by the County Court in its journal declaring the fact that at the meeting, a majority of the electors voted to issue the bonds ''shall be absolutely conclusive as to the regularity of all the proceedings in reference to the matter.'' This order cured all mere irregularities in the proceedings: *Clark* v. *Hood River,* 73 Or. 336 (143 Pac. 897).

14. The remaining questions raised by plaintiff's assignments of error were not discussed in his brief, nor alluded to in the argument, and we therefore assume the same are abandoned. This disposes of all of plaintiff's contentions, and it follows that the judgment of the Circuit Court is affirmed.

Affirmed.

McBride, Bean and Rand, JJ., concur.